NUMBERS

13-00-184-CR and 13-01-185-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

__________________________________________________________________


ROBERT ORAL COX , Appellant,


v.


THE STATE OF TEXAS , Appellee.

__________________________________________________________________


On appeal from the 196th District Court

of Hunt County, Texas.

__________________________________________________________________


O P I N I O N

Before Justices Dorsey, Rodriguez, and Hill (1)

Opinion by Justice Hill

Robert Oral Cox appeals his convictions by a jury for two counts of indecency with a child, N.A., and, as to another child,
P.T., two counts of indecency with a child by sexual contact, one count of indecency with a child by exposure, and two
counts of sexual assault of a child. The jury assessed his punishment for the counts involving N. A. at twenty years without
a fine. The jury assessed his punishment as to count three involving P.T. at ten years in the Texas Department of Criminal
Justice, Institutional Division, while assessing his punishment for each of the remaining counts as to P.T. at twenty years,
together with a fine of $10,000. Cox contends in his first two points on appeal that he was provided ineffective assistance
of counsel when his attorney failed to request notice of the State's intent to introduce extraneous offenses at trial and when
his attorney failed to preserve error for appeal. In the remaining ten points, he urges that the trial court erred in admitting
the following evidence: (1) hearsay testimony regarding the ages of the victims; (2) a whip; (3) handcuffs with keys; (4)
Dallas Child Magazine; (5) Metroplex Sundown Newspaper; (6) Malepak; (7) Net.Sex Magazine; (8) envelope with
information concerning a nudist colony; (9) e-mail from New Day; and (10) a document entitled "welcome boy chat." The
e-mail from New Day and the document entitled "welcome boy chat" were admitted during the punishment phase of the
trial, whereas the other items were admitted during the guilt-innocence phase. We affirm. 

In his first point on appeal, Cox contends that he received ineffective assistance of counsel when his attorney failed to
request notice of the State's intent to introduce extraneous offenses at trial. In order to prevail on a claim of ineffective
assistance of counsel, an appellant must prove by a preponderance of the evidence that his counsel's representation fell
below an objective standard of reasonableness and that the deficient performance prejudiced his defense. Strickland v.
Washington, 466 U.S. 668, 687 (1984). The review of defense counsel's representation at trial is highly deferential. Tong
v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). We engage in a strong presumption that counsel's actions fall within
the wide range of reasonably professional assistance. Id. It is an appellant's burden to overcome the presumption that,
under the circumstances, the challenged action might be considered sound trial strategy. Id. 

Counsel for Cox did not request notice of extraneous offenses under Texas Code of Criminal Procedure, article 37.07,
section 3(g). While trial counsel's failure to file pre-trial motions generally does not result in ineffective assistance of
counsel, purposely deciding not to request disclosure by the State of its intent to introduce evidence of extraneous offenses
may amount to questionable trial strategy. Autry v. State, 27 S.W.3d 177, 182 (Tex. App.--San Antonio 2000, pet. ref'd).

In addition to showing his trial counsel's deficient performance, Cox must also show that his counsel's deficient
performance prejudiced his defense. Cox argues in his brief that counsel's failure to request notice of extraneous offenses
resulted in an unfair trial because his counsel was unable to properly respond to testimony that Cox was looking at nude
children on his computer screen. While Cox suggests that this testimony might have been inadmissible, he presents little
argument and no authority in support of his conclusion. Further, he does not state what his counsel could have done
differently had he received written notice of the State's intent to introduce extraneous offenses. See Autry, 27 S.W.3d at
182. We hold that Cox has failed to show that his counsel was ineffective for failing to request notice of extraneous
offenses. We overrule point one.

Cox urges in point two that he received ineffective assistance of counsel when his counsel failed to take further action to
preserve error after the trial court sustained his objection to various portions of the testimony. Inasmuch as the record is
silent as to why trial counsel did not further pursue the objections in question, we are unable to conclude that Cox's trial
counsel's performance was deficient. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Gamble v. State,
Tex. App.--Houston [1st Dist.] 1996, no pet.). We overrule point two. 

Cox insists in point three that the trial court erred by allowing hearsay testimony from a police officer regarding the ages of
the complainants. Chris Ernest, a former investigator for the Hunt County Sheriff's Office, testified as to the ages of P. T.,
N. A., and another victim. Counsel for Cox objected, based upon hearsay, to his testimony regarding P. T., but made no
objection to questions relating to the other two. P. T. himself testified that he was sixteen; N. A. testified he was fourteen;
and the other victim testified that he was fourteen. Assuming that the officer's testimony as to the children's ages was
hearsay, the improper admission of evidence is harmless and not reversible error when the same facts are proven by the
defendant or other unobjected-to testimony. Marles v. State, 919 S.W.2d 669, 672 (Tex. App.--San Antonio 1996, pet.
ref'd.). 

Cox urges that the officer's testimony was bolstered by the children's testimony as to their ages, but he made no objection
based on bolstering either to the officer's testimony or to the children's testimony. Consequently, as to any argument based
upon bolstering, nothing is preserved for review. Parmer v. State, 38 S.W.3d 661, 668 (Tex. App.--Austin 2000, pet. ref'd). 
We overrule point three.

Cox argues in points four and five that the trial court erred by admitting a whip and handcuffs into evidence. Ernest, the
former sheriff's investigator, identified certain items that he recovered as the result of a search warrant executed at Cox's
place of residence. One of the items was a whip and the other was handcuffs. Cox testified without objection as to having
recovered both a whip and handcuffs. When the whip was first produced before the jury, counsel for Cox made the
following objection:

Your honor, we're going to object to the production of this -- this item until the -- there is still insufficient ground -- has
been laid to determine that -- that the premises which were searched were premises that were under the total control and
access of -- of the defendant and that until such credible evidence is laid, we believe that any item should not be -- come
before the court because of a prejudicial nature of those items when it not [sic] directly liked or related to the offense. 



The trial court overruled the objection. When the whip was actually offered into evidence, Cox's counsel objected, "not --
not waiving our previous objections as to all the evidence, on the grounds of its illegal seizure and on the grounds of its
prejudicial nature and the improper foundation, we have no additional objection." In response to this objection, the trial
court ordered that the whip be admitted into evidence. 

Cox's counsel made no objection when the handcuffs were produced before the jury. When they were offered into evidence,
counsel stated that the previously stated objection was not being waived and that there was no other objection. We
construe Cox's argument on appeal as being that these items should have been excluded from evidence because their
probative value is substantially outweighed by the danger of unfair prejudice. While Cox's objections at trial were
somewhat convoluted, we believe that they at least present the objection that they were prejudicial given the state of the
evidence at the time they were presented. 

The State, rather than attempting to refute Cox's argument that evidence that he possessed a whip and handcuffs was not
relevant and that any probative value was substantially outweighed by the danger of unfair prejudice, argues that Cox has
failed to preserve the error by not objecting to relevance at the time the exhibits were offered into evidence. As we have
noted, Cox did object at the time of the offer as to their prejudicial nature given the state of the record. We hold that Cox's
objection was sufficient to preserve Cox's argument that the exhibits' probative value was substantially outweighed by the
danger of unfair prejudice. 

Given the fact that the whip and handcuffs are highly prejudicial and given that we have not been directed to any probative
value they might have with respect to the offenses with which Cox was charged and are not aware of any, we hold that the
trial court abused its discretion by admitting them into evidence.

Cox urges in point six that the trial court erred when it allowed a copy of Dallas Child Magazine into evidence because the
State failed to link the item to him or show how it was relevant to whether he was guilty of the crimes charged. Dallas
Child Magazine is a parenting magazine that purports to be "the #1 parenting magazine for 9 years." It contains articles,
pictures, and advertisements all related to families and children. There appears to be nothing sexually suggestive about any
of the articles, advertisements, or pictures. Cox's counsel objected to the exhibit on the basis that it was not relevant and
that it in no way indicated any form of criminal or deviant behavior and was not linked to the offenses charged. The State
countered that the exhibit went to intent, motive, opportunity, and identity. We fail to see how it relates to any of those
issues. We hold that the trial court abused its discretion by admitting the copy of Dallas Child Magazine into evidence. 

The State refers us to evidence that one of the victims testified that he had observed Cox on the internet looking at child
pornography and that the same victim testified that while he and Cox were on the internet in Cox's bedroom Cox began
masturbating in front of him. We fail to see how this evidence establishes the relevance of the exhibit.

Cox argues in point seven that the trial court erred by admitting a copy of Metroplex Sundown Newspaper because the
State failed to link the publication to him or show how it was relevant to whether he was guilty of the crimes charged. 
Cox's counsel objected that the newspaper was not linked or related to the offenses charged and that it was of a prejudicial
nature where it was not linked to the offenses charged or to other criminal activity. The State argued that the newspaper
was relevant, that it helped establish identity, motive, and opportunity. It also argued that it would corroborate the
testimony of the victims as to items present in the house. The trial court admitted the exhibit. 

Metroplex Sundown Newspaper is a newspaper relating to adult entertainment in Houston, Fort Worth, Dallas, Arlington,
San Antonio, and Austin. The cover picture, entitled "The Leopard," is that of a model reclining on a stone in front of an
etching of the Sphinx. The model appears to be wearing nothing except painted-on leopard spots. The reader is later told
that it is part of a poster series. The magazine contains numerous articles and advertisements relating to sex. Except for
some romance classified ads, the newspaper appears geared to appeal to heterosexual men who are interested in adult
entertainment. We agree with Cox that any probative value of this publication is substantially outweighed by the danger of
unfair prejudice; therefore, the trial court abused its discretion by admitting this publication into evidence. The State argues
that it offered the exhibit to show intent, motive, opportunity, and identity, but offers no suggestion as to how it might
relate to any of those with respect to the allegations against Cox.

Cox contends in point eight that the trial court erred when it allowed a Malepak catalog into evidence because the State
failed to show how it was relevant to whether he was guilty of the offenses with which he was charged. This is a catalog of
products for men including a "trim cut bikini" with a "high leg cut," a "v-cut seat," and a "narrow lined pouch." Also
included is a hair removal product with "a new sport scent." Counsel for Cox objected to the exhibit on the basis that it had
no relation to any criminal activity, including the offenses with which he was charged. The State argued that anything found
in Cox's house at the time it was searched would constitute admissible evidence and that the exhibit would corroborate the
story of the victims. We disagree with the State's theory that anything found in the house would be admissible. We also
note that the State has not referred us to any later testimony that was corroborated by this evidence. On this appeal, the
State really offers no basis for the admission of this exhibit other than that it was found in Cox's residence. We hold that
the trial court abused its discretion in admitting this exhibit into evidence.

Cox argues in point nine that the trial court erred when it allowed a copy of Net.Sex magazine into evidence because the
State failed to link it to him or show how it was relevant to whether or not he was guilty of the crimes charged. This
"magazine" is actually a general guide to internet sex in book form. The only picture in the book is of Mount Everest.
While a small portion of the book is related to homosexuality matters on the internet, the book is not particularly geared to
homosexuality. There are no articles that we have observed or been referred to that relate to sex with children or any
unnatural interest in children. Counsel for Cox objected on the same basis as the other items we have discussed, including
its inflammatory character and the fact that it was unrelated to criminal activity. The trial court overruled his objection and
admitted the exhibit. The State argues that the item was offered to show intent, motive, opportunity, and identity, but fails
to state how it is relevant to any of those. The State again refers to testimony by a victim that Cox watched child
pornography and masturbated in front of him. We fail to see how the exhibit relates to any of the issues suggested by the
State or in what way the testimony referred to by the State relates to the admissibility of the exhibit. We hold that the trial
court abused its discretion in admitting the exhibit into evidence. 

In point ten, Cox insists that the trial court erred when it allowed into evidence an envelope consisting of several items
related to naturism because the State failed to link the items to him or show how they were relevant to whether he was
guilty of the offenses charged. The items in the envelope include a certificate of completion "for Baring it all at Bluebonnet
Naturist Resort for the Bare as You Dare Cross-Country 5k;" a blank application form for that race; a course layout for the
race; and a flier promoting nude recreation and resorts, apparently produced by the American Association for Nude
Recreation, Inc. No name was filled in the blank on the certificate of completion where the recipient's name would be. 
There were three pictures on the flier promoting nude recreation. One was of a mixed group of adults, presumably nude, in
a pool. The picture displays no breasts, genitalia, anuses, or buttocks. The second picture is that of a small child and an
adult male. They, too, are presumably nude, but none of the body parts just described are shown. The third picture consists
of a distant silhouette of an outdoor massage session. If this were not a flier promoting nude recreation, one could not tell
by looking at the distant silhouette whether the participants are nude.

Counsel for Cox stated that his objections "continue to be the same as we exerted as to all of the items." He also referred to
the highly prejudicial nature of all of the exhibits. The State countered that the exhibit corroborated other testimony
showing Cox to be a nudist. The trial court admitted the exhibit into evidence. We hold that none of this material is
relevant to the issues before the jury in this case and that, even if any is relevant, any probative value is substantially
outweighed by the danger of unfair prejudice. Consequently, the trial court abused its discretion in admitting the exhibit. 
The State's contention that there was other evidence showing that Cox is a nudist will be discussed in connection with the
harm analysis which follows.

We have noted that the trial court abused its discretion in overruling Cox's objections as to several of these items that were
introduced into evidence at the guilt-innocence phase of the trial. The appropriate standard for making a determination as
to harm is to disregard an error unless a substantial right has been affected. Tex. Rule App. P. 44.2(b); Johnson v. State, 43
S.W.3d 1, 3 (Tex. Crim. App. 2001). A substantial right is affected when the error has a substantial and injurious effect or
influence in determining the jury's verdict. Id. We are to affirm if we have a sure conviction that the error did not
influence the jury, or had but very slight affect. Kotteakos v. United States, 328 U. S. 750, 764-65 (1945). If we cannot say
with fair assurance, after pondering all that happened without excluding the erroneous action from the whole, that the
judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. 
Id. Our inquiry is not merely whether there was enough evidence to support the result, apart from the portion of the
evidence affected by the error, but whether the error itself had substantial influence. Id. We must reverse the conviction if
the error had substantial influence or we are left in grave doubt as to whether it had a substantial influence. Id. 

In making this determination, we will first examine the evidence. Ernest, the former investigator for the Hunt County
Sheriff's Department, testified that Cox said that he had been in bed with one of the victims over one hundred times when
the victim's mother was not around and that he was a nudist who frequently walked around without wearing clothes. He
identified the articles found at Cox's residence that were introduced into evidence and discussed his investigation as to what
information might be found in Cox's computer. A picture, found on Cox's computer, of one of the victims and of other
people was introduced into evidence. Ernest indicated that he made no investigation into the reputation of the victims as to
their truthfulness. He did indicate that N. A. was the son of Cox's girlfriend. Ernest testified that he did not confront any of
the victims about Cox's explanation that the reason for the victim's stories was that one of them had stolen something from
him. 

Marco Roblis, who assisted Ernest in his investigation, testified that Cox indicated in an interview that he had been in bed
with the boys over a hundred times playing video games with them and that they might have seen him nude because he was
a nudist who walked around his house naked.

Charlotte, the mother of one of the victims, testified she dated Cox until the accusations against him were made. She
testified without objection that Cox had told her he was a member of a nudist colony. She said that he did not walk around
the house nude in her presence, but that she and he had bathed in his hot tub without clothes. She also testified, without
objection, that Cox had a screensaver on his computer consisting of naked boys running around with cows in a field. She
also testified concerning various times when Cox may have been with the victims. 

The mother of another victim testified concerning her son going to Cox's residence and doing some work for him. She
indicated that she became suspicious when her son indicated to her that he did not wish to go back to Cox's residence to do
more work. Later, after the victims had testified, she testified again, indicating that her son had said that on several
occasions he had seen Cox on the internet looking at child porn sites and adult porn sites. 

Each of the victims testified as to what Cox did to them. They were cross-examined as to the details of what had occurred
and as to any incompleteness or inconsistencies that might be found between their testimony and the statements that they
had given to the sheriff's department. Testimony concluded with Ernest relating further details of his investigation.

In closing arguments at the guilt-innocence phase, the State did not make any reference to these materials. Counsel for Cox
referred to it, saying that there was no screensaver with nude children and cows in a field included in what was found and
pointing out that the material was not connected to the offenses for which Cox was charged. 

In examining the record as a whole, we find that the following testimony was given without objection: Ernest testified that
he found a whip and handcuffs at Cox's residence; the handcuffs were displayed to the jury prior to their being offered into
evidence; two sheriff's investigators testified that Cox acknowledged that he was a nudist; Charlotte, Cox's former
girlfriend and the mother of one of the victims, testified that he had told her he was a member of a nudist colony and that he
had a screensaver with nude boys and cows in a field; and the mother of another victim testified that her son told her he
had observed Cox watching child and adult pornographic sites on the internet. While the State sought to put Cox in a bad
light with the evidence we have held was improperly admitted, considering the evidence we have discussed that was
admitted without objection and considering the entire record, we have a sure conviction that the error did not influence the
jury, or had but a very slight effect on the jury, as to both Cox's conviction and punishment. We overrule points four
through ten. 

Cox urges in points eleven and twelve that the trial court erred by admitting State's exhibits 16 and 17 into evidence at the
punishment phase of his trial. State's exhibit 16 is a posting with the screen name New Day, apparently posted on an
internet site called "boy chat." The posting appears to be a fictional adventure story set in a foreign country, about an adult
male and a thirteen-year-old companion The story contains nothing of a sexual nature. State's exhibit 17 is a posting on
the internet, also under the screen name New Day. While it bears that screen name, it reflects that the posting was done by
proxy. The posting indicates that New Day was going to "be here" at least another thirty days because "they" would only do
bond reductions thirty days apart. New Day indicated that it would take at least two hearings to bring his bond down and
that he would not be using the telephone much because it was too expensive. He also indicated that PGP 5.0 for windows
with 4,096 bit key is unbreakable. The exhibit also displays the subject of responses to the posting and the screen names of
those responding. Considering all of the evidence discussed and the entire record, we have a sure conviction that any error
in admitting these exhibits did not influence the jury, or had but a very slight effect on the jury, as to both Cox's conviction
and punishment. We overrule points eleven and twelve. 



The judgment is affirmed. 





 

JOHN HILL,

Senior Justice



Publish .

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 9th day of August, 2001.

1. Senior Justice John Hill assigned to this court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't
Code Ann. § 74.003 (Vernon 1998).