Criminal Case Template



COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



THOMAS JEFFERSON SOLOMON,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§



§


§


§


§

No. 08-06-00187-CR


Appeal from the


109th District Court


of Winkler County, Texas


(TC# 4507)


O P I N I O N



 This is an appeal from a jury conviction for the offense of aggravated assault with a deadly
weapon. The jury assessed punishment at fifteen years' imprisonment and a fine of $10,000. (1) We
reform and affirm.

I. SUMMARY OF THE EVIDENCE


 At trial, Tony Garcia testified that, in February of 2002, he was a Lieutenant Investigator for
the Kermit Police Department in Winkler County, Texas. On February 4, 2002, he was called to
respond to an assault at 310 San Antonio Street. Upon arrival, he encountered an individual named
Curtis Hannah, who had been cut and was bleeding profusely from his mouth. Hannah's mother was
at the residence. Lieutenant Garcia learned that Appellant had cut Hannah. The officer met with
Appellant, who admitted cutting Hannah with a knife. Appellant stated that, while the two were
fighting, Hannah threatened to go inside his house and get a gun. Appellant then cut him with the
knife. Lieutenant Garcia took possession of the knife from Appellant, and Appellant was transported
to the Winkler County Jail. The officer testified that the wound required numerous stitches and that,
in the manner and means of its use and intended use, the knife was a deadly weapon. Lieutenant
Garcia stated that, while he could smell alcohol on Hannah's breath, he could not tell whether he was
intoxicated when he interviewed him. A search of Hannah's house did not reveal a gun.

 Curtis Allen Hannah testified that he is an epileptic, is 5' 8" tall, and weighed 155 pounds. 
He was forty-four years old at the time of the incident. Hannah testified that he drank two beers prior
to the incident when he was stabbed. He stated that he had grown up with Appellant and that
Appellant had stayed at his house the night before the incident. They had been drinking beer. 
Hannah, who was unable to drive, loaned Appellant his bicycle so that Appellant could get to work
that morning. Appellant returned the bike thirty minutes later. Appellant came by the house at noon. 
Hannah had drunk two beers. Appellant stated that Hannah owed him $25; Hannah testified that he
did not owe the money. Hannah refused to give Appellant any money, and Appellant hit him twice,
causing Hannah to hit him back. Appellant then cut Hannah with a knife. Hannah testified that the
wound was serious in that it separated his jaw from his upper face. His mother arrived and called
for an ambulance. Hannah denied that he ever told Appellant that he was going to shoot him.

 Appellant testified in his own behalf. He admitted cutting Hannah at noon on the day of the
incident. He gave a statement to Lieutenant Garcia, and he handed over the knife. The night before
the incident, he had loaned Hannah $25, although he then stated that Hannah gave him $16 and then
borrowed $9 from Appellant in order to purchase some beer. On the morning of the incident,
Appellant borrowed Hannah's bicycle in order to get to work. When he returned to Hannah's house
at around 12:30 p.m., Hannah was intoxicated. Appellant asked him for the money, but Hannah
cursed Appellant and hit him in the jaw. A fight ensued in the alley. Hannah told Appellant that he
was going to shoot him and that he was a dead man. This frightened Appellant. Appellant testified
that he knew Hannah had a nine-millimeter Glock pistol, which Appellant had seen and handled on
prior occasions. Appellant testified that Hannah kept the gun loaded. Appellant related that Hannah
reached into his pocket to pull out his keys in order to get into the house to get the gun. Appellant
cut Hannah in order to slow him down so that he could get away. Appellant jumped into his truck
and drove off, lying down in the seat. Appellant stated that he was defending himself.

 On cross-examination, Appellant testified that he was 5' 11" and weighed 140 pounds. He
stated that the fighting moved from the alley toward the door of the house, which caused him
concern that Hannah could enter the house and get the gun.

 Appellant testified that he was released from jail seven months after the incident. He bought
a tape recorder and got a friend, Jeremiah (Jerry) Yeiter, to record Hannah's making statements about
the gun. Yeiter did so and brought the tape back to Appellant.

 Jeff Killion testified that, within a month after the stabbing occurred, Hannah told him that
he had a gun and that he had intended to shoot Appellant during the fight. Killion stated that Hannah
told him that his mother took the gun away after the stabbing.

 Yeiter stated that he had used a cassette recorder to record a conversation with Hannah. He
identified the voices on the tape as being his and Hannah's. (2)

 The State utilized the testimony of Katherine Robinson in rebuttal. She testified that she was
Curtis Hannah's mother. On the day of the incident, she learned that her son had been stabbed. 
When she got to his house, she saw he was bleeding profusely, and she called the ambulance. The
skin was hanging down on his face. Robinson testified that she did not take a gun from his house. 
Further, she stated that her son had never owned a gun.

II. DISCUSSION


 In Issue No. One, Appellant contends that the evidence was factually insufficient to
demonstrate that he did not act in self-defense. When evaluating a challenge to the factual
sufficiency of the evidence, we view all the evidence in a neutral light and inquire whether we are
able to say, with some objective basis in the record, that a conviction is "clearly wrong" or
"manifestly unjust," because the great weight and preponderance of the evidence contradicts the
jury's verdict. Watson v. State, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). It is not enough
that this Court harbor a subjective level of reasonable doubt to overturn a conviction that is founded
on legally sufficient evidence, and this Court cannot declare that a conflict in the evidence justifies
a new trial, simply because it disagrees with the jury's resolution of that conflict. Id. at 417.

 Evidence is factually insufficient, if it is so weak that it would be clearly wrong and
manifestly unjust to allow the verdict to stand or if the finding of guilt is against the great weight and
preponderance of the available evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 
Therefore, the question we must consider in conducting a factual sufficiency review is whether a
neutral review of all the evidence, both for and against the finding, demonstrates that the proof of
guilt is so obviously weak as to undermine confidence in the fact finder's determination, or that the
proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. See id. In
performing this review, we are to give due deference to the fact finder's determinations. See id. at
8-9; Clewis v. State, 922 S.W.2d 126, 136 (Tex. Crim. App. 1996). The fact finder is the judge of
the credibility of the witnesses and may "believe all, some, or none of the testimony . . . ." 
Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Consequently, we may find the
evidence factually insufficient only where necessary to prevent a manifest injustice from occurring. 
See Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

 An accused bears the burden of production with defenses, requiring him to raise evidence that
would support the defense before he is entitled to it. Zuliani v. State, 97 S.W.3d 589, 594 (Tex.
Crim. App. 2003). However, once the defense is raised, the State bears the burden of persuasion to
disprove the defense. Id. The burden of persuasion is not one that requires the production of
evidence; rather, it requires only that the State prove its case beyond a reasonable doubt. Id. The
defense is a fact issue to be determined by the jury, which is free to accept or reject it. Saxton v.
State, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991). When a jury finds the defendant guilty,
there is an implicit finding against the defensive theory. Zuliani, 97 S.W.3d at 594; Saxton, 804
S.W.2d at 914.

 The law provides that a person is justified in using force against another when, and to the
degree that, he reasonably believes the force is immediately necessary to protect himself against the
other's use or attempted use of unlawful force. Tex. Penal Code Ann. § 9.31(a). A person is
justified in using deadly force against another (1) if he would be justified in using force against the
other under section 9.31; (2) if a reasonable person in the actor's situation would not have retreated;
and (3) when, and to the degree that, he reasonably believes the deadly force is immediately
necessary, either to protect himself against the other's use or attempted use of unlawful deadly force
or to prevent the other's imminent commission of aggravated kidnaping, murder, sexual assault,
aggravated sexual assault, robbery, or aggravated robbery. Id. at § 9.32(a). "Deadly force" is
defined as "force that is intended or known by the actor to cause, or in the manner of its use or
intended use is capable of causing, death or serious bodily injury." Id. at § 9.01(3).

 In the instant case, we find that the evidence was factually sufficient to support the
conviction, in that the contrary proof did not so outweigh the evidence of guilt that a manifest
injustice occurred. While there was contradictory evidence regarding the existence of the gun, both
Hannah and his mother did testify that no such gun existed, and the police did not find a gun in the
house. Furthermore, the jury could well have determined that deadly force was not immediately
necessary in that the gun, if it existed, was inside the house and the complainant needed to get his
key to open the door. As between Appellant and Hannah, the evidence conflicted as to whether a
threat was made, and the jury was warranted in its implied conclusion that no such threat was made. 
Accordingly, we overrule Issue No. One.

 In Issue No. Two, Appellant asserts that he did not receive effective assistance of counsel. 
At trial, trial counsel questioned the mother of the victim about an alleged inappropriate sexual
relationship with an individual who had been a local preacher, and who was deceased at the time of
trial. During closing argument at the punishment stage of the trial, defense counsel apologized to
the jury for asking the question. Appellant also complains that his trial counsel failed to present any
evidence in mitigation of evidence at the punishment stage of trial. (3) Further, Appellant notes that
trial counsel failed to make an opening argument at the guilt-innocence stage of trial.

 Successful claims of ineffective assistance of counsel must first demonstrate that counsel was
not functioning as counsel guaranteed by the Sixth Amendment in providing reasonably effective
assistance. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The second
prong of this test requires a showing that counsel's errors were so serious as to deprive Appellant
of a fair trial, such that there arises a reasonable probability that, but for counsel's unprofessional
errors, the results would have been different. Reasonable probability is a likelihood sufficient to
undermine confidence in the outcome. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Texas
adopted this test in Wilkerson v. State, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986); see also
McFarland v. State, 845 S.W.2d 824, 842 (Tex. Crim. App. 1992), cert. denied, 508 U.S. 963, 113
S. Ct. 2937 (1993). The constitutional right to counsel does not mean errorless representation. In
order to meet the constitutional standard, counsel must provide reasonably effective assistance. 
Wilkerson, 726 S.W.2d at 548. In reviewing these assertions, the totality of representation is
examined as opposed to focusing upon isolated acts or omissions. Ineffective assistance of counsel
cannot be established by isolating or separating out one portion of the trial counsel's performance
for examination. Bridge v. State, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). In that regard, this
Court, on review, will not engage in hindsighted comparisons of how other counsel, in particular,
appellate counsel, might have tried the case. See Wilkerson, 726 S.W.2d at 548. A fair assessment
of trial counsel's performance requires that every effort be made to eliminate the distorting effects
of hindsight, to reconstruct the circumstances at trial, and to evaluate the conduct from counsel's
perspective at the time. Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). We must
indulge a strong presumption that counsel's conduct falls within the wide range of reasonably
professional assistance. The Appellant must overcome the presumption that, under the
circumstances at trial, the challenged action could be considered sound trial strategy. Strickland, 466
U.S. at 689, 104 S. Ct. at 2065; Stafford, 813 S.W.2d at 506. Consequently, allegations of
ineffectiveness of counsel must be firmly founded by the record. Hawkins v. State, 660 S.W.2d 65,
75 (Tex. Crim. App. 1983); Mercado v. State, 615 S.W.2d 225, 228 (Tex. Crim. App. 1981). The
burden is upon Appellant to establish ineffective assistance of counsel by a preponderance of the
evidence. Williams v. State, 837 S.W.2d 759, 761 (Tex. App.--El Paso 1992, no pet.).

 Initially, we note that Appellant did not file a motion for new trial and that no hearing was
held regarding his ineffectiveness claim. In most instances, the record on direct appeal is
undeveloped and cannot adequately reflect the failings of trial counsel. Thompson v. State, 9 S.W.3d
808, 813-14 (Tex. Crim. App. 1999). A defendant may rebut the presumption of effectiveness by
providing a record from which the appellate court can ascertain that trial counsel's performance was
not based on sound trial strategy. Parmer v. State, 38 S.W.3d 661, 666 (Tex. App.--Austin 2000,
pet. ref'd). A defendant may provide that record by filing a motion for new trial and obtaining a
hearing thereon, based on ineffective assistance of counsel. Id. Any error in trial strategy will be
deemed inadequate representation only if counsel's actions are without any plausible basis. Id. A
record that does not include any discernible explanation of the motivation behind trial counsel's
actions fails to establish whether his actions were of strategic design or were the result of negligent
conduct. Thompson, 9 S.W.3d at 813-14.

 No such record is before us. Accordingly, Appellant has failed to meet his burden to
demonstrate ineffective assistance of counsel. Issue No. Two is overruled.

III. CONCLUSION


 We reform the trial court's judgment to reflect that the jury assessed punishment and affirm
the judgment of the trial court as reformed.

 KENNETH R. CARR, Justice


July 12, 2007


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. We note that the judgment indicates that the court assessed punishment. However, the record clearly indicates
that the jury assessed punishment. This Court has the authority to reform an incorrect judgment when it has the
information and evidence necessary to do so. Tex. R. App. P. 43.2(b); Norman v. State, 642 S.W.2d 251, 253 (Tex.
App.--Houston [14th Dist.] 1982, no pet.). Because we have the necessary information, we reform the trial court's
judgment to reflect that the jury assessed punishment.
2. The content of the tape is difficult to discern, but one individual can be heard stating something about a gun
and shooting someone dead. 
3. Appellant did not appear for the punishment stage of his trial.