COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



CLARENCE LEROY DIGHTON,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-06-00163-CR



Appeal from the


416th District Court


of Collin County, Texas


(TC# 416-80565-06)



O P I N I O N


 This is an appeal from jury convictions for two counts of sexual assault of a child and for two
counts of indecency with a child. The jury assessed punishment at twenty years' imprisonment on
the two counts of sexual assault of a child. A $10,000 fine was assessed on the first of those counts,
and the court ordered that the two counts were to run consecutively. The jury assessed punishment
at ten years' imprisonment on one count of indecency with a child, and punishment was assessed 
at twenty years' imprisonment on the other count. We affirm.

I. SUMMARY OF THE EVIDENCE


 The complainant was eighteen at the time she testified at trial. She testified that, when she
was eight years old, her parents got a divorce. She and her two brothers initially lived with her
father, Appellant, in Georgia, where he began to sexually abuse her. He began this abuse by
touching her clothed breasts and bottom; on one occasion he came out of the shower naked, and
when the complainant turned her head, Appellant told her she needed to explain to him what his
penis was and what it was used for. That evening, she was sleeping in Appellant's bed and he pulled
aside her underwear and got on top of her until she started crying. At times, he would feel her
breasts. He told her he was checking for cancer.

 The family moved to Oklahoma when the complainant was in the sixth or seventh grade. 
They lived with Appellant's parents. During this time, the complainant testified that Appellant
touched her breasts and buttocks, and he touched her vagina. Several months later, they moved to
Richardson, Texas. Appellant would frequently have the complainant sleep in his bed, and he would
touch her breasts, bottom, and vagina. This activity increased in frequency. Appellant began to
perform oral sex upon her and he would fondle her breasts and rub his penis against her vagina. 
Appellant had her masturbate him. On another occasion, Appellant made her undress and he brought
her brothers into the room. Appellant explained the different parts of a woman's body and made her
spread her legs. He also made her brothers undress and get on top of her. Appellant also began
penetrating her with a blue dildo.

 At the time the complainant was starting the eighth grade, they moved to Allen, in Collin
County, Texas. The molestation ceased for a period of time. Appellant then asked the complainant
to find him a girlfriend, and, until one was found, he would "use you for now." He began sucking
on her breasts and vagina. He made her masturbate him, and he penetrated her with his penis, saying
it should not hurt, because he had been getting her ready with the dildo. This sexual activity
increased until it was occurring almost every night. In one incident, Appellant made the complainant
perform oral sex upon him, and he penetrated her "doggy-style."

 Just prior to the complainant's turning fifteen, Appellant informed the children that he was
going back into the military, and they were to go live with their mother in Oklahoma. This move
occurred in August of 2002. The complainant would still occasionally see Appellant on weekend
visits. She stayed at his house when she went back to Texas to have her braces removed. While she
was watching television, Appellant told her that he needed something to remind him of her as he was
not going to see her for a long while. He pulled her down on him and had intercourse with her.

 The complainant testified that Appellant had told her not to tell anyone about the sexual
activity, because no one would believe her and he would deny it and come and get her. However,
while living in Allen, she told her best friend, Shawna Stephenson. She asked Shawna not to tell
anyone. Shawna told her mother, but no report was made to the authorities at that time. In
December 2002, while living with her mother, the complainant said during an argument between the
two, "At least your dad wasn't messing with you your whole younger life." The complainant then
told her mother the nature of the sexual activity that had occurred, and her mother promptly
contacted the police.

 The complainant was taken to the Collin County Children's Advocacy Center. She was
interviewed and was given a sexual assault examination. The interviewer testified that the
complainant related with specificity what had occurred between her and Appellant. The interviewer
also testified that it was common for children of the complainant's age not to report abuse, due to
shame and embarrassment. The sexual assault nurse examiner stated that the verbal history given
by the complainant indicated that Appellant had sexually assaulted her for four years and that the
conduct had involved, among other things, sexual intercourse. The physical genital examination
revealed that there was a wearing away of the complainant's hymen, which was consistent with the
given verbal history. The nurse examiner could not tell from the condition of the hymen when the
sexual activity had occurred. She also stated that most sexual assault exams do not show any trauma,
and she would not have expected to see trauma at this exam or any previous exams.

 The defense emphasized the complainant's failure to make an earlier outcry and implied that
the mother's boyfriend was responsible for the sexual activity. The boyfriend lived with the family
when the complainant lived with her mother, and the complainant referred to him as her "step dad." 
He then moved out of the house to live with his mother. After an argument with her mother, the
complainant moved in with them. The complainant, who was eighteen at the time, had recently had
a baby. She was no longer associated with the father of the baby, although her "step dad" and her
mother supported the complainant.

 The complainant stated that she had undergone two previous medical examinations and
neither showed signs of trauma from sexual activity. The first exam was in Talihina, Oklahoma,
when the complainant was about ten years old. Her mother requested the exam, because one of the
complainant's brothers had indicated that she was being abused. At that time, the complainant
denied being sexually active, because she did not think anyone would believe her.

 Dr. Linda Parker testified for the defense. In December of 2001, Appellant took the
complainant to Dr. Parker in Allen for a pap smear. The complainant denied being sexually active
at this exam as well. The doctor performed an external genital examination. She did not see any
signs of sexual intercourse, and she testified that such signs would be evident if the sexual activity
had occurred as indicated by the complainant at trial. On cross-examination, however, Dr. Parker
stated that she was a family practice doctor and that she did not use any of the specialized
instruments that the nurse examiner had utilized in the exam that occurred a year later. Dr. Parker
stated that it was a possibility that such instrumentation would reveal signs of sexual activity that her
naked eye examination could not see.

II. DISCUSSION


 In Issue No. One, Appellant asserts that the evidence was factually insufficient to support the
conviction on all counts. Specifically, Appellant contends that the evidence is factually insufficient
because, given the length of time over which the sexual abuse occurred and the frequency with which
it occurred, the two medical exams should have revealed such abuse. Further, the complainant
denied that sexual abuse occurred during the two examinations. Also, Appellant points out that
when the complainant gave her limited outcry to Shawna Stephenson, and Shawna told her mother,
nothing was done with the information.

 When conducting a factual-sufficiency review, we view all of the evidence in a neutral light.
Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We will set the verdict aside only if
(1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or (2) the verdict
is against the great weight and preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11
(Tex. Crim. App. 2000). Under the first prong of Johnson, we cannot say that a conviction is
"clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we
would have voted to acquit, had we been on the jury. Watson v. State, 204 S.W.3d 404, 417 (Tex.
Crim. App. 2006). Under the second prong of Johnson, we cannot declare that a conflict in the
evidence justifies a new trial, simply because we disagree with the jury's resolution of that conflict. 
Id. Before finding that the evidence is factually insufficient to support a verdict under the second
prong of Johnson, we must be able to say, with some objective basis in the record, that the great
weight and preponderance of the evidence contradicts the jury's verdict. Id.

 In conducting a factual-sufficiency review, we must also discuss the evidence that, according
to the appellant, most undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003). The fact finder alone determines what weight to place on conflicting testimony, because
that determination depends on the fact finder's evaluation of witnesses' credibility and demeanor. 
Cain, 958 S.W.2d at 408-09. As the sole determiner of the credibility of the witnesses, the fact
finder may choose to believe all, some, or none of the testimony presented. Id. at 407 n.5.

 With regard to Appellant's contentions concerning the medical examinations, there was
testimony from the nurse examiner that trauma was often not found in sexual abuse cases, and it did
not surprise her that no indications of trauma were found in the earlier examinations. Furthermore,
she had used specialized instrumentation and had conducted an internal exam as opposed to the
external visual exam conducted by Dr. Parker. Also, Dr. Parker testified that she was not specifically
looking for signs of sexual activity when she conducted her exam, and she stated that it was possible
that someone using the specialized instruments could find evidence of sexual activity, whereas one
performing a visual exam would not.

 There was also testimony that children will often fail to report sexual abuse, due to shame
and embarrassment. While Shawna Stephenson's mother apparently did not report the alleged
abuse, (1) when compared with the detailed testimony of the complainant and the testimony of the
witnesses who conducted the sexual assault examination, we find that the jury was free to believe
their testimony, and we find the evidence is factually sufficient to support the conviction. Issue No.
One is overruled.

 In Issue No. Two, Appellant argues that he received ineffective assistance of counsel when
his trial counsel failed to request a limiting instruction regarding the extraneous offenses. Successful
claims of ineffective assistance of counsel must first demonstrate that counsel was not functioning
as counsel guaranteed by the Sixth Amendment in providing reasonably effective assistance. 
Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The second prong of
this test requires a showing that counsel's errors were so serious as to deprive Appellant of a fair
trial, such that there arises a reasonable probability that, but for counsel's unprofessional errors, the
results would have been different. Reasonable probability is a likelihood sufficient to undermine
confidence in the outcome. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Texas adopted this test
in Wilkerson v. State, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). See also McFarland v. State,
845 S.W.2d 824, 842-43 (Tex. Crim. App. 1992), cert. denied, 508 U.S. 963 (1993). The
constitutional right to counsel does not mean errorless representation. In order to meet the
constitutional standard, counsel must provide reasonably effective assistance. Wilkerson, 726
S.W.2d at 548. In reviewing these assertions, the totality of representation is examined, as opposed
to focusing upon isolated acts or omissions. Ineffective assistance of counsel cannot be established
by isolating or separating out one portion of the trial counsel's performance for examination. Bridge
v. State, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). In that regard, this Court, on review, will
not engage in hindsighted comparisons of how other counsel, in particular, appellate counsel, might
have tried the case. See Wilkerson, 726 S.W.2d at 548. A fair assessment of trial counsel's
performance requires that every effort be made to eliminate the distorting effects of hindsight, to
reconstruct the circumstances at trial, and to evaluate the conduct from counsel's perspective at the
time. Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). We must indulge a strong
presumption that counsel's conduct falls within the wide range of reasonably professional assistance. 
The Appellant must overcome the presumption that, under the circumstances at trial, the challenged
action could be considered sound trial strategy. Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2064-65; Stafford, 813 S.W.2d at 506. Consequently, allegations of ineffectiveness of counsel must be
firmly founded by the record. Hawkins v. State, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983);
Mercado v. State, 615 S.W.2d 225, 228 (Tex. Crim. App. 1981). The burden is upon Appellant to
establish ineffective assistance of counsel by a preponderance of the evidence. Williams v. State, 837
S.W.2d 759, 761 (Tex. App.--El Paso 1992, no pet.).

 In the present case, Appellant filed a motion for new trial, but he did not raise the issue of
ineffective assistance of counsel. No hearing was held on the motion for new trial. In most
instances, the record on direct appeal is undeveloped and cannot adequately reflect any failings of
trial counsel. Thompson v. State, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999). A defendant may
rebut the presumption of effectiveness by providing a record from which the appellate court may
ascertain that trial counsel's performance was not based on sound trial strategy. Parmer v. State, 38
S.W.3d 661, 666 (Tex. App.--Austin 2000, pet. ref'd). A defendant may provide that record by filing
a motion for new trial and obtaining a hearing thereon, based on allegedly ineffective assistance of
counsel. Id. Any error in trial strategy will be deemed inadequate representation, only if counsel's
actions are without any plausible basis. Id. A record that does not include any discernible
explanation of the motivation behind trial counsel's actions fails to establish whether his actions
were of strategic design or were the result of negligent conduct. Thompson, 9 S.W.3d at 813-14.

 The claim made in the present case is similar to the claim made in Ex parte Varelas, 45
S.W.3d 627 (Tex. Crim. App. 2001). In Varelas, the defendant's counsel failed to request a limiting
instruction or a reasonable doubt instruction when the trial court admitted State-offered evidence of
an extraneous offense. Id. at 631. In response to the defendant's claim of ineffective assistance on
direct appeal, the Court of Criminal Appeals stated:

 [W]e have trouble understanding why trial counsel did not request a burden of proof
or limiting instruction regarding these offenses. However, the bare record does not
reveal the nuances of trial strategy. Further, to hold trial counsel's actions (or
inaction) ineffective in the instant case would call for speculation and such
speculation is beyond the purview of this Court. Rather, because of the strong
presumptions that trial counsel's conduct falls within the wide range of reasonable
professional assistance and that such conduct might be sound trial strategy, we must
conclude, in light of an otherwise silent record, that appellant failed to meet his
burden of showing that his trial counsel's assistance was ineffective.


Id. at 632.


 For Appellant properly to raise this contention on appeal, his avenue is through a post-conviction writ. He has failed to meet his burden on this direct appeal. Issue No. Two is overruled.

III. CONCLUSION


 We affirm the judgment of the trial court.


 KENNETH R. CARR, Justice


December 27, 2007


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)

1. Although Appellant places significant emphasis on the fact that Shawna's mother did not report the
information to the authorities, we do not see how her failure to follow up on the information given to her by her daughter
casts any light on the issue of whether the conduct occurred.