# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============

## NO. 03-00-00136-CR

===============


**Robert Parmer, Appellant**

**v.**

**The State of Texas, Appellee**


=====================================================================

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 992135, HONORABLE CHARLES CAMPBELL, JUDGE PRESIDING

=====================================================================


Appellant Robert Parmer was convicted by a jury of the offenses of burglary of a habitation[1] and aggravated sexual assault.[2] The jury assessed his punishment at thirty-five years' imprisonment for the burglary offense and forty-two years' imprisonment for aggravated sexual assault. Appellant appeals these convictions.


**Points of Error**

Appellant advances six points of error claiming ineffective assistance of counsel and the improper admission of evidence. In his first, fifth, and sixth points of error, appellant contends that he was denied the effective assistance of counsel when counsel failed to call "a

---

[1] Tex. Penal Code Ann. § 30.02(a)(1) (West Supp. 2000). The current code is cited for convenience.

[2] Tex. Penal Code Ann. § 22.021(a)(1)(A)(i) (West Supp. 2000). The current code is cited for convenience.

critical witness," and failed to request limiting instructions at the time extraneous acts were admitted into evidence along with a reasonable doubt instruction. In appellant's second, third, and fourth points of error, complaint is made of admission of "irrelevant evidence" of appellant's returning to the victim's home and the subsequent leaving of a note in the victim's car, both being extraneous acts admitted over a Rule 403 objection. *See* Tex. R. Evid. 403.

## Facts

The sufficiency of the evidence is not challenged. A brief statement of the facts will place the points of error in proper perspective. K.C., the forty-four-year-old complainant, testified that about 11:30 p.m. on August 9, 1998, she was alone in her home; that a stranger appeared in her bedroom; and that he sexually assaulted her without her consent. K.C. identified appellant as the man who broke and entered her house and assaulted her. K.C. did not report the rape until the next afternoon. She was taken to a hospital and examined.

About two weeks after the offense, on a Saturday near midnight, K.C. heard a knocking or noise in her home. She thought a neighbor was trying to attract her attention and opened her front door. Appellant was standing there and put his foot inside the door. K.C. struggled and pushed, and finally got the door closed. She called the police.

On September 27, 1998, K.C. left her residence to lock her automobile parked in the driveway. She noticed that a printed brochure in the driver's seat had some handwriting on it, including the word "bitch." K.C. grabbed the brochure and ran into her residence. The note read:

2

Okay, bitch. I want that ass, so if you don't want me to get your daughter, leave the door open for me. Don't go to the police because I am watching, I will kill her.

The police were called and took possession of the note. Fingerprints taken from the brochure matched the known prints of appellant. A handwriting expert testified that he was of the opinion that the handwriting on the brochure matched appellant's handwriting.

The twenty-four-year-old appellant told a different story. Appellant related that in the evening prior to the alleged burglary and rape he had gone to Central Market in Austin and purchased groceries. As appellant walked to the apartment where he lived with his brother, K.C., a woman whom he did not know, stopped her car and offered him a ride. On the way to the apartment, appellant reported that K.C. invited him to her house to drink wine. K.C. parked behind the apartment complex and could not see him entering his brother's apartment. Later, they drove to K.C.'s home where, according to appellant, they began drinking wine and then proceeded to the bedroom. Appellant stated that K.C. seduced him and they had consensual sex. Afterwards, appellant told K.C. that their actions had been "wrong" because she was older than he was. K.C. became angry and told appellant to "get out." Appellant left.

Appellant testified that about a week and a half later, K.C. came to his apartment and acted apologetically. Appellant told her that he did not think that they could be friends because of the way she had acted. Appellant reported that K.C. got "mad" and left.

Appellant's brother, John, testified that appellant moved into his apartment in May or June 1998; that one day in August appellant brought groceries home from Central Market and

3

left without saying where he was going; that sometime later a Hispanic woman, whom he did not know, appeared at the apartment and asked for appellant; and that appellant came to the door and talked to the woman a few minutes and came back into the apartment.

## Ineffective Assistance of Counsel—Standard of Review

Three of appellant's points of error involve claims of ineffective assistance of counsel. We shall briefly review the applicable law.

The standard for appellate review of the effectiveness of counsel, either retained or appointed, is the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984), adopted in Texas by *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). Under the *Strickland* standard, a convicted defendant must: (1) show that his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel, and (2) show that the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. *Strickland*, 466 U.S. at 686-89; *Oestrick v. State*, 939 S.W.2d 232, 237 (Tex. App.—Austin 1997, pet. ref'd); *Banks v. State*, 819 S.W.2d 676, 681 (Tex. App.—San Antonio 1991, pet. ref'd). Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Strickland*, 466 U.S. at 687; *Oestrick*, 939 S.W.2d at 237. Under this test, a defendant has the burden to prove a claim of ineffective assistance of counsel by a preponderance of evidence. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

The review of a claim of ineffective assistance of counsel is highly deferential. *Strickland*, 486 U.S. at 689. A reviewing court must indulge a strong presumption that trial counsel's conduct falls within a wide range of reasonable representation. *McFarland*, 928 S.W.2d at 500. An ineffective counsel claim cannot be demonstrated by isolating one portion of counsel's representation but instead must be judged on the totality of the representation. *Oestrick*, 939 S.W.2d at 237.

A strong presumption also exists that counsel's actions might be considered sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Any error in trial strategy will be deemed inadequate representation only if counsel's actions are without any plausible basis. *Ex parte Ewing*, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978); *Thomas v. State*, 886 S.W.2d 388, 392 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd).

**Failure To Call Witness**

Initially, appellant claims his trial counsel failed to investigate and call a "critical" witness to testify at the guilt/innocence stage of the trial. Appellant urges that his counsel was ineffective in not calling William Walker to testify that a woman fitting the complainant's description came to Walker's apartment asking for appellant subsequent to the alleged offenses. Walker directed the woman to appellant's apartment.

A defendant may rebut the presumption of effectiveness of counsel by providing a record from which the reviewing court may determine that trial counsel's performance was not based on sound trial strategy. *Gravis v. State*, 982 S.W.2d 933, 937 (Tex. App.–Austin 1998,

5

pet. ref'd). A defendant may provide that record by filing a motion for new trial and obtaining a hearing thereon based on ineffective assistance of counsel. *Reyes v. State,* 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). In the instant case, appellant filed a motion for new trial based solely on the claim of ineffectiveness of counsel because Walker was not called as a witness. The State takes the position that any testimony developed at the hearing on the motion for new trial cannot be considered because the motion was not heard as required within seventy-five days from the date the trial court imposed sentence in open court. *See* Tex. R. App. P. 21.8. We agree. Appellant has not provided a record sufficient to determine his ineffective assistance claim based on the failure to call Walker as a witness.

## An Out-of-Time Hearing

The procedural provisions governing motions for new trial in a criminal case must be strictly complied with for the trial court to have jurisdiction to consider the motion. *Oldham v. State*, 977 S.W.2d 354, 361 (Tex. Crim. App. 1998); *Drew v. State*, 743 S.W.2d 207, 223 (Tex. Crim. App. 1987); *Stone v. State*, 931 S.W.2d 394, 396 (Tex. App.—Waco 1996, pet. ref'd).

Rule 21.8 in pertinent part provides:

(a) *Time To Rule.* The court must rule on a motion for a new trial within 75 days after imposing or suspending sentence in open court.

\* \* \* \* \*

(c) *Failure to Rule.* A motion not timely ruled on by written order will be deemed denied when the period prescribed in (a) expires.

Tex. R. App. P. 21.8 (a), (c).

Under Rule 21.8 and its forerunners, if a motion for new trial has not been ruled on by written order within seventy-five days after sentence is imposed in open court, the motion is overruled by operation of law and the trial court loses jurisdiction to rule on the motion. *State v. Garza*, 931 S.W.2d 560, 562 (Tex. Crim. App. 1996); *State ex rel Cobb v. Godfrey*, 739 S.W.2d 47, 49 (Tex. Crim. App. 1987); *Laidley v. State*, 966 S.W.2d 105, 107-08 (Tex. App.–Houston [1st Dist.] 1998, pet. ref'd); *Hamilton v. State*, 804 S.W.2d 171, 174 (Tex. App.–Fort Worth 1994, pet. ref'd). Thus, a hearing conducted after the motion for new trial has been overruled by operation of law is not authorized and will not be considered on appeal. *Laidley*, 966 S.W.2d at 107-08. A trial counsel's affidavit, filed one day after the motion for new trial was overruled by operation of law, cannot be considered on appeal. *Howard v. State*, 894 S.W.2d 104, 107 (Tex. App.–Beaumont 1995, pet. ref'd). An order denying a new trial cannot be disturbed on appeal based on information obtained at a hearing, if any, conducted after the motion has been overruled by operation of law. *Adams v. State*, 765 S.W.2d 479, 481 (Tex. App.–Texarkana 1988, pet. ref'd).

Even though a hearing on a motion for new trial commenced within the seventy-five-day period before being recessed because of a bomb threat, the subsequent hearing after the motion was overruled by operation of law was a nullity under the particular circumstances there involved. *Johnson v. State*, 925 S.W.2d 745, 748 (Tex. App.–Fort Worth 1996, pet. ref'd). In *Huizar v. State*, 841 S.W.2d 875, 877 (Tex. App.–Corpus Christi 1992, no pet.), a hearing on

7

the new trial motion was set within the seventy-five-day period but the defendant and his counsel failed to appear. The hearing was reset one day outside the seventy-five-day period. On that date, the trial court determined it was without authority to hold a hearing. On appeal, such action was upheld as the motion had been overruled by operation of law.

In the instant case, sentence was imposed in open court on October 26, 1998. New defense counsel filed a motion for new trial on November 22, 1998, alleging ineffective assistance of appellant's trial counsel solely for failing to call William Walker as a defense witness. On January 7, 1999, the trial court afforded appellant an opportunity to have his motion heard. The date was within the seventy-five-day time limit. No affidavit was offered, no testimony was heard, and no hearing was conducted. In a colloquy at the bench, appellant and his new counsel informed the trial court that Walker's whereabouts were unknown and that appellant's trial counsel was not present. Walker's parents had been contacted and they had hired a private investigator to locate him. It was believed that Walker was in Florida and would return to classes at the University of Texas about January 17, 1999. Without objection,[3] the trial court reset the hearing on the motion for January 21, 1999, warning appellant that in doing so, the court might lose jurisdiction to entertain the motion.

The seventy-fifth day after the imposition of sentence was January 9, 1999, a Sunday. Therefore, the motion for new trial was overruled by operation of law on Monday, January 10, 1999. *See* Tex. R. App. P. 4.1. On January 21, 1999, the trial court conducted a hearing on the motion. After hearing testimony, the trial court overruled the motion. The trial

---

[3] *See Baker v. State*, 956 S.W.2d 19, 24-25 (Tex. Crim. App. 1997).

court, however, was without jurisdiction to hear the motion and the facts developed are not before this Court for review. *Laidley*, 966 S.W.2d at 107-08; *Adams*, 765 S.W.2d at 481. There is an insufficient record to apprize appellant's contention.

Even if the facts developed at the hearing on January 21, 1999, were properly before this Court for review, we conclude that appellant failed to sustain his burden under the *Strickland* standard. William Walker testified that he lived in the same apartment complex as appellant, and that sometime after the date of the offense, August 9, 1998, a woman came to his apartment asking for appellant. He directed the woman to the apartment where appellant lived. Walker could not remember the date this incident occurred. He eventually placed the date after Christmas 1998 and before spring break in 1999. This did not tend to corroborate appellant's testimony that the complainant came to his apartment to see him a week or a week and a half after the offense in August 1998.

Walker could not remember the face of the woman who asked him for directions to appellant's apartment. He gave a general description of her height, weight, age, and complexion. Walker had selected three photographs from a photographic array, and it was stipulated that one of the three was the complainant. No testimony was elicited from Walker about his availability at the time of the trial in October 1998.

Appellant's trial counsel testified that shortly before trial, appellant had mentioned to him that there were witnesses who could corroborate him and his brother that the complainant came to his apartment after the alleged offenses. He recalled one witness was a woman named Elizabeth whom he decided not to use as a witness because she had been in and out of a state

9

hospital. Counsel did not testify that Walker's name was given to him. Appellant, in his testimony at the hearing, stated that he told his trial counsel about Walker, but acknowledged that he may only have referred to Walker by his first name—"Will."

Trial counsel is not necessarily ineffective for failure to call every witness requested by a defendant. *Tutt v. State*, 940 S.W.2d 114, 121 (Tex. App.—Tyler 1996, pet. ref'd). Counsel's failure to call witnesses at the guilt/innocence stage of a trial is irrelevant to a claim of ineffective assistance of counsel absent a showing that the witnesses were available and the defendant would have benefitted from the presentation of their testimony. *Wilkerson v. State*, 726 S.W.2d 542, 550-51 (Tex. Crim. App. 1986); *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Nieto v. State*, 990 S.W.2d 874, 876 (Tex. App.—Waco 1999, pet. ref'd); *O'Hara v. State*, 837 S.W.2d 139, 144 (Tex. App.—Austin 1992, pet. ref'd).

The testimony at the hearing did not establish that Walker was available at the time of the trial or if trial counsel had investigated and found Walker that his testimony would have benefitted appellant. The first point of error is overruled.

### Second and Third Points of Error

In his second and third points of error, appellant contends that the trial court erred in admitting irrelevant evidence showing appellant returned to the complainant's home about two weeks after the date of the alleged offenses, and about seven weeks later left a threatening note in the complainant's automobile. The short answer to appellant's contentions is that the errors were not preserved for review because appellant made no objection to the evidence on the basis

now urged on appeal. To preserve error for appellate review, a timely, specific objection must be made. Tex. R. App. P. 33.1(a)(1)(A); *Armstrong v. State*, 718 S.W.2d 686, 689 (Tex. Crim. App. 1985). Moreover, the complaint on appeal must comport with the trial objection or nothing is presented for review. *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); *Skillern v. State*, 890 S.W.2d 849, 859 (Tex. App.–Austin 1994, pet. ref'd). A trial objection stating one legal theory may not be used to support a different legal theory on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

Appellant briefs his contentions as if the extraneous acts were admitted over objection under the intent and identity exceptions to Rule 404(b). *See* Tex. R. Evid. 404(b). There was no Rule 404(b) objection made. Regardless, whether appellant claims the evidence was irrelevant or inadmissible under Rule 404(b), there was no preservation of error for review on appeal.[4] The second and third points of error are overruled.

### An Unusual Procedure

In his fourth point of error, appellant contends that the "trial court erred in admitting evidence of extraneous acts over appellant's [Rule] 403 objection." Appellant urges that evidence of the extraneous acts of appellant by returning to the complainant's home and trying to force entry, and by leaving a threatening note, were highly prejudicial and substantially outweighed any probative value the evidence had, if any. *See* Tex. R. Evid. 403. Appellant also argues that before the trial court overruled his Rule 403 objection, the trial court failed to conduct

---

[4] The discussion in the fourth point of error further demonstrates why no error was preserved.

a hearing or a balancing test. *See Montgomery v. State*, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1990).

The Rule 403 objection was made during the course of a highly unusual procedure.[5] Prior to the voir dire examination of the jury panel and independent of any hearing on pretrial motions in limine or to suppress evidence, the prosecutor, in the presence of the defense counsel, told the trial court she wanted to refer to the extraneous acts or offenses in her opening statement to the jury. *See* Tex. Code Crim. Proc. Ann. art. 36.01(a)(3) (West Supp. 2000). The prosecutor expressed her uncertainty as to the procedure but orally made a proffer of proof concerning the extraneous offenses. The trial court upon inquiry determined that the State intended to use the extraneous offense evidence in its case-in-chief and not in rebuttal, and the State believed the evidence was admissible on the issues of identity and intent. Appellant's counsel pointed out that the acts, if they occurred, were subsequent to the alleged offenses and "the prejudicial value outweighs the probative value." The trial court then determined that appellant's counsel was making a Rule 403 objection and not claiming inadmissibility under Rule 404(b). *See* Tex. R. Evid. 404(b).

The record then reflects:

> The Court: All right. I'm going to overrule the objection and allow it [evidence of extraneous acts] in under identity and intent exceptions to Rule 404(b). I'm taking your word as an officer of the Court that these are going to be issues of facts in this case. Because if you get up and tell this jury in opening that this is stuff that's coming in and those don't

---

[5] The State's appellate counsel even expressed puzzlement.

12

pan out to be issues, then you are going to have a real problem. I'm sure you know that.[6]

The prosecutor in her opening statement to the jury referred, without further objection, to the two extraneous acts. She even read to the jury the threatening note in its entirety. The opening statement of appellant's trial counsel followed. In it, counsel conceded the evidence would show that appellant committed the extraneous acts but stated that the evidence would show appellant's reasons for doing so, which reasons counsel then explained to the jury.

In the State's case-in-chief, the details of the two extraneous acts were elicited from the complainant on direct examination, without further objection. When the threatening note was offered into evidence, appellant's counsel stated, "No objection, your Honor." Other testimony relating to the investigation of the two extraneous acts were also admitted into evidence without objection.

Testifying in his own behalf, the twenty-four-year-old appellant stated that the complainant picked him up as he walked away from a grocery store, took him to her home, gave him wine, and seduced him. He claimed that the sexual act was consensual; that later when he told the complainant she was too old for him, she became angry and told him to leave; and that when the complainant came to his apartment a week or so later he told her there was no basis for a relationship.

---

[6] The evidentiary ruling of the court was made at the request of the State before the jury was selected or any trial testimony was offered. There was no formal motion, oral or written. There was no objection to the procedure. Our discussion is not to be considered as an acceptance or approval of the procedure used.

Appellant explained that he became concerned about his conduct and his statements to the complainant and went to her home one night to apologize. After he knocked on the front door, the complainant opened the door, screamed, and told him she had filed charges against him, and slammed the door. Appellant became angry that the complainant had filed charges because he was on probation in Arkansas.[7] Appellant admitted that he later left a note in the complainant's car in order to scare her.

To support his claim of error, appellant relies on his Rule 403 objection made at the bench during the unusual pretrial procedure described. If a defendant objects to the admission of evidence but the same evidence is subsequently introduced without objection, the defendant waives his earlier objection. *Massey v. State*, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996); *Hughes v. State*, 878 S.W.2d 142, 155 (Tex. Crim. App. 1992); *Anderson v. State*, 717 S.W.2d 622, 626-27 (Tex. Crim. App. 1986). Specific objections must be made each time an offer of inadmissible evidence is offered in order to preserve any error for review. *Purtell v. State*, 761 S.W.2d 360, 368 (Tex. Crim. App. 1998); *Miranda v. State,* 813 S.W.2d 724, 739 (Tex. App.—San Antonio 1991, pet. ref'd).

In light of the foregoing, we need not discuss appellant's argument that the trial court failed to conduct a Rule 403 balancing test at the time of his objection. We do observe that while the trial court has an obligation under the rule to weigh the probative value of the evidence against the unfair prejudice of the evidence's admission, the balancing test need not be performed on the record. *Yates v. State*, 941 S.W.2d 357, 367 (Tex. App.—Waco 1997, pet. ref'd); *see also*

---

[7] Appellant admitted that he had committed over forty felonies in Arkansas.

*Poole v. State*, 974 S.W.2d 892, 897 (Tex. App.–Austin 1998, pet. ref'd).  By overruling the Rule 403 objection, the trial court necessarily conducted the balancing test by considering and overruling the objection.  *Howland v. State*, 966 S.W.2d 98, 103 (Tex. App.–Houston [1st Dist.] 1998) (citing *Yates*, 941 S.W.2d at 367)); *Poole*, 974 S.W.2d at 897.  The fourth point of error is overruled.

**Failure to Request Instructions**

In his fifth and sixth points of error, appellant continues to argue that he was deprived of his constitutional right to the effective assistance of counsel.  Appellant claims that his trial counsel was ineffective when he failed to request a limiting instruction concerning the admission of extraneous acts or offenses when such evidence was offered at the guilt/innocence stage of the trial, including an instruction on reasonable doubt pertaining to these extraneous matters.  Although not cited in his brief, appellant apparently relies upon Rule 105(a).  *See* Tex. R. Evid. 105(a).

In *George v. State*, 890 S.W.2d 73, 76 (Tex. Crim. App. 1994), the Court of Criminal Appeals held that, if requested at the guilt/innocence phase of the trial, the trial court must instruct the jury not to consider extraneous offense evidence admitted for a limited purpose under Rule 404(b) of the Texas Rules of Evidence unless it is believed beyond a reasonable doubt that the defendant committed the extraneous offense.  Appellant cites *Rankin v. State*, 974 S.W.2d 707 (Tex. Crim. App. 1996).  There, it was held error for the trial court, upon proper request, to defer the giving of the limiting instruction until the written charge was given to the jury.  The

15

limiting instruction must be given upon request at the time the evidence in question is admitted. *Id.* at 713. The *Rankin* cause was remanded for a harm analysis in view of the trial court's error. *Id.*[8] *Rankin* did not, however, address the question here presented, whether the failure of trial counsel to request a limiting instruction when the evidence was admitted constitutes ineffective assistance of counsel.

Appellant, of course, has the burden of proving ineffective assistance of counsel. *Bohnet v. State*, 938 S.W.2d 532, 536 (Tex. App.–Austin 1997, pet. ref'd). The matters advanced under these points of error were not grounds in a motion for new trial. Thus, appellant must rely upon the trial record to support these claims. The record is silent as to why appellant's counsel failed to request a limiting instruction when the evidence was introduced and is therefore insufficient to overcome the presumption that counsel's actions were part of a strategic plan. *Tong v. State*, 25 S.W.3d 707, 714 (Tex. Crim. App. 2000); *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). In the absence of evidence concerning counsel's reasons—or lack thereof—for his actions, we are unable to conclude that his performance was deficient under the first prong of the *Strickland* standard. *See Jackson*, 877 S.W.2d at 771.

Moreover, trial counsel is not necessarily deficient for failing to request a limiting instruction on extraneous matters when the evidence is introduced. *Garcia v. State*, 887 S.W.2d 862, 881 (Tex. Crim. App. 1994) (holding that trial counsel's failure to request a limiting

---

[8] The *Rankin* opinion was withdrawn in part on other grounds on rehearing. *Rankin v. State*, 974 S.W.2d 707, 717. On remand, the error was held to be harmless. *Rankin v. State*, 995 S.W.2d 210 (Tex. App.–Houston [14th Dist.] 1999, pet. ref'd).

instruction did not constitute ineffective assistance where counsel testified he did not want to draw more attention to the incriminating evidence).

In *Ryan v. State*, 937 S.W.2d 93, 104-05 (Tex. App.—Beaumont 1996, pet. ref'd), the court wrote:

> With nothing in the record to explain why trial counsel did not request the instruction, we can only conclude his trial strategy may have been to not draw further attention to the extraneous offenses. Furthermore, even if trial counsel's performance was deficient, appellant's counsel on appeal provides us with no analysis of how, with reasonable probability, the outcome of the proceeding would have been different, had trial counsel requested the instruction on extraneous offenses.

In the instant case, where appellant and the complainant testified to the extraneous acts, and other numerous references were made thereto without objection, there may have been a number of reasons why appellant's counsel did not request a limiting instruction each time the extraneous acts were mentioned. We will not speculate. The desired instruction was given in the written charge of the court to the jury. Even this instruction would not be necessary where the extraneous acts are offered to prove a main fact in the case such as intent or knowledge. *Porter v. State*, 709 S.W.2d 213, 215 (Tex. Crim. App. 1986); *Navarro v. State*, 863 S.W.2d 191, 199 (Tex. App.—Austin 1993, pet. ref'd).

Under any circumstances, appellant has not sustained the burden placed on him by the two-pronged (deficiency and prejudice) test of *Strickland* with regard to these claims of ineffective assistance of counsel. The fifth and sixth points of error are overruled.[9]

---

[9] We have construed appellant's points of error as referring to a limiting instruction to the jury under Rule 105(a) as discussed in *George v. State*, 890 S.W.2d 73, 76 (Tex. Crim. App.

The judgment is affirmed.

_____
John F. Onion, Jr., Justice

Before Justices Kidd, Yeakel and Onion*

Affirmed

Filed:   November 30, 2000

Publish

---

\*   Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

---

1994). This instruction, includes, *inter alia*, directions to the jury not to consider the admitted extraneous act evidence, even for the stated limited purpose, unless it finds beyond a reasonable doubt that the defendant had committed the extraneous acts. We note that in his sixth point of error appellant cites cases dealing with giving a "definition" of reasonable doubt at the punishment phase of the trial. We do not consider these cases pertinent to our understanding of appellant's points of error. If it be appellant's contention that a limiting instruction under Rule 105(a) as to extraneous offense evidence must contain a "definition" of reasonable doubt, he has not properly briefed that issue. Moreover, we observe that in *Paulson v. State*, No. 829-99 (Tex. Crim. App. Oct. 4, 2000), the Court has overruled *Reyes v. States*, 938 S.W.2d 718 (Tex. Crim. App. 1996) in its entirety and overruled *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991) to the extent that it required an instruction of the "definition" of reasonable doubt in the court's charge to the jury.