**Opinion issued May 16, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**No. 01-18-00065-CR**

**No. 01-18-00066-CR**

———————————

**SHAWN AMENDE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 450th District Court[1]**
**Travis County, Texas**
**Trial Court Case Nos. D-1-DC-16-904086, D-1-DC-16-904087**

---

[1]     Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal from the Court of Appeals for the Third District of Texas to this Court. *See* Misc. Docket No. 18–9010, Transfer of Cases from Courts of Appeals (Tex. Jan. 12, 2018); *see also* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We are unaware of any conflict between precedent of that court and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

## MEMORANDUM OPINION

Shawn Amende drove a car that collided with another vehicle, killing its driver. He appeals his convictions for intoxication manslaughter with a deadly weapon and aggravated assault with a deadly weapon. *See* TEX. PENAL CODE §§ 1.07(a)(17)(b) (deadly weapon); 22.02 (aggravated assault), 49.08 (intoxication manslaughter). The jury assessed punishment at 28 years' imprisonment and 5 years' imprisonment, respectively. The court rendered judgments of conviction on the jury's verdicts with the sentences running concurrently. On appeal, he contends that the trial court erred by admitting evidence of an extraneous bad act. We disagree and affirm.

## Background

On April 12, 2015, Amende drank margaritas and tequila shots with his girlfriend and her coworker at a restaurant in Austin. He became so intoxicated that he passed out on the table. When they left the restaurant, Amende declined a ride home and drove his car with his girlfriend in the passenger seat at a rate of over 100 miles per hour. He ran many red lights before hitting a car driven by Maleeca Smith. Smith died at the scene before emergency personnel could arrive. Amende testified that he was in a blackout state and did not remember driving.

Amende pleaded guilty to intoxication manslaughter for the death of the other driver and aggravated assault against his girlfriend who was in his car. He

also pleaded true to an enhancement based on a prior felony conviction. He elected for a jury to decide whether he used a deadly weapon, specifically a car during, the commission of the crimes and to decide his punishment.

Before making its decisions, the jury heard testimony from Amende's girlfriend's coworker, describing her observations of Amende at the restaurant and as he began driving home. The jury heard from other bystanders who observed the accident.

Police officers and responding medical personnel described their observations at the scene and Amende's demeanor after the collision. Amende's blood alcohol level in a sample taken about an hour after the accident was 0.204. His blood also tested positive for marijuana.

A vehicular homicide detective trained as a crash reconstructionist concluded that, just before the collision, Amende's car was traveling at 90 miles per hour and Smith's speed was 45 miles per hour. The detective testified that Amende's vehicle could cause serious bodily injury or death.

The State introduced evidence of Amende's criminal history, including misdemeanor marijuana convictions and a 2006 felony conviction for possession of cocaine. The State played clips of Amende's phone calls from jail and videos of his jail visits with friends and family. In the clips Amende appeared to joke about going to treatment, made derogatory comments about the victim's family, and

3

suggested more fatal drunk driving incidents reported in the news would normalize what had happened for potential jurors.

Defense witnesses testified that, while released on personal bond, Amende completed a 90-day inpatient drug and alcohol program and a 9-week outpatient program. A pretrial services officer testified that Amende had no violations and wore a GPS ankle monitor. He also wore a device that could detect if he ingested alcohol. At the time of trial, he had worn the device for 787 days without violation.

The defense called several character witnesses who described Amende's troubled upbringing and remorse. Amende's girlfriend testified; she was the victim of the aggravated assault. Amende also took the stand in his own defense. He described his unstable childhood, his criminal history including a prior felony conviction for cocaine possession, and his previous incarceration. He explained his recollection of the evening of the fatal collision and his rehabilitative efforts since the crash. He admitted he had been dealing drugs. He also admitted that he had been a felon in possession of a firearm.

The jury found Amende guilty of intoxication manslaughter with a deadly weapon and assessed punishment at 28 years' imprisonment. The jury also found him guilty of aggravated assault with a deadly weapon and assessed punishment at 5 years' imprisonment. The court rendered judgments in both cases, with the sentences running concurrently. This appeal followed.

**Admission of Extraneous Offense**

In his sole issue, Amende argues that the trial court erred by admitting evidence of an extraneous offense during the punishment phase of trial. He argues that evidence that he possessed a gun after he had been convicted of a felony should not have been admitted. We disagree.

## A.    Standard of Review

We review a trial court's decision to admit extraneous offense evidence during the punishment phase of trial under an abuse of discretion standard. *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996) (internal quotations omitted). We will uphold a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Article 37.07 of the Code of Criminal Procedure provides that during the punishment phase of trial, evidence as to any matter deemed relevant to sentencing may be admitted, including evidence of an extraneous offense shown beyond a

reasonable doubt to have been committed by the defendant. TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1). Evidence is relevant to sentencing if it is "helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *Rodriguez v. State*, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006). This includes but is not limited to evidence regarding an extraneous crime or bad act for which the defendant could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act. TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1). Prior crimes or bad acts are introduced to provide additional information that the jury may consider in determining what sentence the defendant should receive. *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999).

Although the trial court has wide latitude in determining the admissibility of punishment-phase evidence, the evidence must still satisfy Texas Rule of Evidence 403. *Lamb v. State*, 186 S.W.3d 136, 143 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see also Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). Relevant evidence may be excluded pursuant to Rule 403 if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

When a party objects under Rule 403, the reviewing court weighs several factors in deciding admissibility including: "(1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004); *see also Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (listing factors courts consider when conducting a Rule 403 balancing test); *Sunbury v. State*, 88 S.W.3d 229, 235 (Tex. Crim. App. 2002) (suggesting in dicta that these factors also apply to Rule 403 decisions on punishment evidence). Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996). The rule requires exclusion of evidence only when there is a clear disparity between the danger of unfair prejudice and the probative value of the evidence. *Id.* The trial court is presumed to have conducted the proper balancing test if it overrules a Rule 403 objection, regardless of whether it conducted the test on the record. *See Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997); *Parmer v. State*, 38 S.W.3d 661, 670 (Tex. App.—Austin 2000, pet. ref'd).

**B.**	**Analysis**

The trial court did not abuse its discretion in admitting evidence that Amende had possessed a gun after a felony conviction.

Before the punishment hearing, the court held a pretrial hearing on Amende's motion to suppress evidence of extraneous conduct. At the hearing, Amende sought to suppress evidence that on November 11, 2012, he shot and killed another person. The victim came to Amende's home to purchase marijuana but robbed him instead. The grand jury did not issue an indictment. The trial court ruled that evidence of this incident and the fact that the grand jury did not issue an indictment were not admissible.

Amende testified at the punishment hearing. He stated that he was convicted of felony possession of cocaine in 2006, sentenced to five years' imprisonment, and paroled after two years. He also had prior marijuana misdemeanor convictions. Amende stated that he was selling drugs when arrested for possession of cocaine, and the amount of cocaine he had with him when arrested was more than for personal use. After he was released on parole, he struggled to find employment and participated in medical trials for money. About two years after his release, he returned to selling marijuana. Eventually, he began working for a moving company, where he worked at the time of the accident and at the time of trial. He

8

described it as "hard work" that left him with a "good feeling" of exhaustion at the end of each work day.

After his testimony, the State requested a hearing outside the presence of the jury. The State urged the court to reconsider its earlier evidentiary rulings. The State argued that evidence that Amende had possessed a gun, continued to sell drugs after his release from prison, and had spent a large amount of money around the time of the collision should be admissible because Amende's testimony left a false impression with the jury that he was "some sort of upstanding citizen working hard at a blue-collar job." Over Amende's objection, the court agreed that the jury had been left with an impression that Amende was "selling a little bit of marijuana to get by" and allowed the State to question him regarding expensive jewelry he purchased and his possession of a gun as "part and parcel" of his drug dealing. The trial court ruled that the probative value of the evidence of possession of a firearm outweighed its prejudicial nature. The court did not allow the State to mention the 2012 shooting or grand jury no-bill.

On cross-examination, Amende admitted that after he was released from prison, he returned to selling drugs, including selling a pound of marijuana. He admitted that he had possessed a firearm as a felon, which is a third-degree felony. He sold drugs until the date of the fatal collision, he purchased expensive jewelry

for his girlfriend, and he made an $8,000 car payment in cash, totaling about $20,000 in cash expenditures.

The trial court could have reasonably concluded that Amende's extraneous conduct had high probative value. At trial, Amende testified that he was a felon in possession of a firearm, a third-degree felony. *See* TEX. PENAL CODE § 46.04 (unlawful possession of a firearm). Because this was an act for which he could have been held criminally responsible for, the trial court could have reasonably concluded that the extraneous conduct had probative value in determining what sentence he should receive. *See Fields*, 1 S.W.3d at 688 (citing TEX. CODE CRIM. PROC. art. 37.07, §3(a)) (stating prior crimes or bad acts give the jury additional information that they may use to determine punishment).

The court could have reasonably determined that the State had a specific need to introduce the evidence. The testimony clarified Amende's actions by describing the extent of his drug dealing. The testimony rebutted the defense's characterization that Amende sold small amounts of marijuana after struggling to make a living as a clinical research study subject. It also rebutted the characterization that he supported himself solely as a hardworking mover. The State needed the evidence to give the jury a more accurate impression of the likely recurrence of criminal behavior and to help the jury determine what sentence Amende should receive. *See* TEX. PENAL CODE § 1.02 (explaining one of the

purposes of the Code is to ensure the public safety by "such punishment as may be necessary to prevent likely recurrence of criminal behavior"); *see also Fields*, 1 S.W.3d at 688.

The trial court did not abuse its discretion in deciding that the probative value outweighed the risk of unfair prejudice. The evidence's "legitimate purpose" was to allow the jury to properly consider Amende's punishment. *Fowler v. State*, 126 S.W.3d 307, 311 (Tex. App.—Beaumont 2004, no pet.) ("Evidence of defendant's prior assaults certainly had a tendency to cause a jury to increase his punishment. But that was its legitimate purpose. The value of the extraneous offense evidence was in permitting the jury to tailor the sentence to the defendant.") The trial court allowed the State to question Amende regarding gun possession but did not allow the State to question him about the related no-billed homicide. The record demonstrates that the court was aware of the potential risk of unfair prejudice and tailored the evidentiary ruling to avoid it.

For the same reasons, the trial court did not abuse its discretion in determining that the evidence would not impress the jury in "some irrational, yet indelible way." *Erazo*, 144 S.W.3d at 489. The jury could separate the brief testimony about gun possession before the incident from testimony from multiple witnesses about the collision and its aftermath.

We hold that the trial court acted within its discretion by admitting evidence that Amende was a felon in possession of a firearm. *See Mitchell*, 931 S.W.3d at 953; *see also Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

We overrule Amende's sole issue on appeal.

**Conclusion**

We affirm the trial court's judgments.

Peter Kelly
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).